# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-2493

WILLIAM RICKETT,                           APPELLANT,

     V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS,            APPELLEE.

## O R D E R

Before KASOLD, *Chief Judge*, and HAGEL, MOORMAN, LANCE, DAVIS, SCHOELEN, PIETSCH, and BARTLEY, *Judges*.[1]

On April 14, 2009, more than 120 days after the November 5, 2008, Board of Veterans' Appeals (Board) decision that denied benefits for his bilateral lower extremity peripheral neuropathy, veteran William Rickett filed pro se a Notice of Appeal (NOA) with the Court. *See* 38 U.S.C. § 7266(a) (NOA must be filed within 120 days of Board decision). Prior to April 14, however, and within the 120-day period to file an NOA, Mr. Rickett had mailed a letter to an office (022D) within the VA Office of General Counsel (OGC), expressing an intent to appeal to the "Courts." Preliminary Record (PR) at 1. As further discussed below, because Mr. Rickett mailed his letter to OGC (022D) within the 120-day appeal period, his letter reflected an intent to seek review at the Court, and he promptly filed an NOA with the Court upon learning that he had misfiled, equitable tolling of the 120-day appeal period is warranted, and his appeal will be accepted.

## I. BACKGROUND[2]

On November 5, 2008, the Board mailed to Mr. Rickett its decision and a standard Notice of Appellate Rights (NAR). As reflected by a U.S. Postal Service (USPS) postmark, on January 8, 2009, Mr. Rickett mailed to the "Office of General Counsel (022D)" a document that states:

> Refer to (014A4)
> William C. Rickett
> [Social Security Number]
> This is to inform you that I wish to appeal this to the Courts
> Thank you
> [signed William C. Rickett]

---

[1] Judge Greenberg did not participate in this matter because it was assigned for a full court decision and conferencing was held prior to his appointment with the Court. *See* Court's INTERNAL OPERATING PROCEDURES, sec. VII(b)(1)(B).

[2] The facts below are based on the parties' submissions, confirmed by the preliminary record, and undisputed.

PR at 1-3. The document reflects a VA date stamp of January 26, 2009, and at some point it was forwarded to the VA regional office (RO) in Waco, Texas, which received the document on February 19, 2009. *See* PR at 3. The RO stamped it "appeals" and placed it in a locked cabinet where Board decision files are held – to maintain their integrity pending possible appeal – for 150 days following a Board decision. PR at 1; *see also* April 26, 2012, Oral Argument Transcript at 33:30. On March 6, 2009, the 120-day period to file an appeal expired. *See* 38 U.S.C. § 7266(a). Upon receiving no response with regard to his appeal, on April 14, 2009, Mr. Rickett contacted the Court and recognized his error in sending his intent to appeal to OGC (022D). That day, he also mailed an NOA to the Court, attached a copy of his letter to OGC (022D), and explained his error. On July 28, 2009, the Secretary filed a motion to dismiss for untimely filing.

At the time Mr. Rickett filed his NOA with the Court, equitable tolling of the time to file an NOA was deemed legally impermissible, and Mr. Rickett's appeal was dismissed for lack of jurisdiction. *See Rickett v. Shinseki*, 23 Vet.App. 366, 368-71 (2010) (relying on *Henderson v. Peake*, 22 Vet.App. 217 (2008), and *Henderson v. Shinseki*, 589 F.3d 1201 (Fed. Cir. 2009) (*Henderson I* and *II*, respectively)). Mr. Rickett appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). While his appeal was pending decision by the Federal Circuit, *Henderson II* was overturned by the U.S. Supreme Court in *Henderson v. Shinseki*, 131 S. Ct. 1197, 1206 (2011) (*Henderson III*), which found that the 120-day period to file an appeal to this Court under section 7266(a), although an "important procedural rule," was not jurisdictional. Based on *Henderson III*, the Federal Circuit vacated the Court's *Rickett* decision and remanded the case for further adjudication. *See Rickett v. Shinseki*, 421 F. App'x 967 (Fed. Cir. 2011).

Following *Henderson III*, this Court held in a panel decision that, "subject to revision, pursuant to the Court's rule-making authority," the 120-day period to file an NOA is subject to equitable tolling within the parameters established by the precedents of the Federal Circuit and this Court prior to *Henderson I. See Bove v. Shinseki*, 25 Vet.App. 136, 140 (2011) (per curiam order). One such precedential decision is *Reed v. Principi*, 17 Vet.App. 380, 383 (2003). *Reed* held that an NOA addressed to and filed with the OGC after the 120-day appeal period (1) could not be accepted as timely under the statutory postmark filing rule, *id*. (noting that 38 U.S.C. § 7266(c) applies to NOAs "properly addressed to the Court"), and (2) did not warrant equitable tolling because, inter alia, claimants are unfamiliar with the VA OGC. 17 Vet.App. at 385.

However, later Federal Circuit precedents – namely, *Brandenburg v. Principi*, 371 F.3d 1362 (Fed. Cir. 2004) (NOA misfiled at Board), and *Bailey (Edward) v. Principi*, 351 F.3d 1381 (Fed. Cir. 2003) (NOA misfiled at RO) – focused on factors other than familiarity with the place of filing in their equitable tolling analyses. In light of these later precedents, as well as the fact that the 120-day appeal period is an important procedural rule, *Henderson III* at 1206, en banc review is warranted to assess the continued viability of *Reed* and the application of equitable tolling when an NOA is filed within the 120-day appeal period, but at a location other than the Court.

## II. ANALYSIS

### A. Caselaw Regarding Equitable Tolling in Cases of Timely Misfilings

Our analysis begins with this Court's and the Federal Circuit's equitable tolling caselaw as applied in varying circumstances over time. Section 7266(a) states that a claimant "shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed" to the claimant. The 120-day period initially was viewed as a jurisdictional barrier to the exercise of this Court's authority to review Board decisions. *See Butler v. Derwinski*, 960 F.2d 139, 140-41 (Fed. Cir. 1992); *Cleary v. Brown*, 8 Vet.App. 305, 307 (1995). The Federal Circuit in *Bailey (Howard) v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc), subsequently held that the 120-day period could be equitably tolled in cases where "'the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Id.* at 1364 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnotes omitted)).

Although *Bailey (Howard)* involved the untimely filing of an NOA due to the misleading conduct of an adversary (the Secretary), the Federal Circuit's subsequent caselaw on equitable tolling primarily has addressed the other prong of equitable tolling recognized by *Bailey (Howard)*, to wit: the timely filing of a defective pleading. The first pertinent holding is found in *Jaquay v. Principi*, 304 F.3d 1276 (Fed. Cir. 2002), which involved the interplay between the filing of a motion for Board Chairman reconsideration, and this Court's decision in *Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991), which held that the finality of a Board decision was abated upon the filing of a motion for Board Chairman reconsideration if the motion was filed within the 120-day appeal period, such that a new 120-day period would begin when and if the motion for reconsideration by the Board Chairman was denied.

The appellant in *Jaquay* filed a motion for Board Chairman reconsideration of a Board decision within the 120-day appeal period, but he filed it with the RO that had processed his claim instead of with the Board Chairman, as required by VA regulation. 304 F.3d at 1279. About 10 months later, the RO forwarded the motion to the Board Chairman, who denied it. *Id.* Within 120 days of that denial, the appellant filed his NOA with the Court, which rejected it as untimely filed because the motion for reconsideration by the Board Chairman had not been filed with the Board Chairman within the 120-day period. *Id.* at 1279-80. The Federal Circuit held that the filing of a motion for reconsideration by the Board Chairman within the 120-day appeal period – as needed to effectuate a *Rosler* abatement – did not require strict compliance with VA regulations on where to file such a motion for reconsideration; therefore, filing the motion with the RO effectuated a *Rosler* abatement. *Id.* at 1288-89.

In support of its holding in *Jaquay*, the Federal Circuit noted that (1) the due diligence requirement for equitable tolling is more relaxed when a pro se claimant timely misfiles a pleading, (2) the veteran-friendly nature of proceedings before VA, during the "non-adversarial stage of a claim for benefits," counseled construing due diligence in favor of the claimant, (3) the misfiling at the RO from which the claim originated showed that the claimant actively sought redress of the

Secretary's action and did not constitute a garden variety claim of excusable neglect, (4) the misfiling with the RO was the claimant's only misstep in filing his motion for reconsideration by the Board Chairman, and (5) internal VA policies governed the forwarding or return of misdirected mail. *Id.* at 1287; *see id.* at 1288 (citing provision of the *VA Adjudication Procedures Manual M21-1* that is now located at M21-1MR, pt. II, ch. 5, sec. 3).

In this context – the misfiling within the 120-day appeal period of a motion for reconsideration by the Board Chairman at the RO from which the claim originated – the Federal Circuit further noted that the postmisfiling actions by the claimant were not for consideration in the equitable tolling assessment; rather, the timely misfiling at the RO from which the claim originated satisfied, as a matter of law, the due diligence requirement for equitably tolling the time to file a motion for reconsideration by the Board Chairman for purposes of a *Rosler* abatement. *Id.* at 1288-89. The Federal Circuit also explicitly noted that there was no dispute that Mr. Jaquay filed his NOA at the Court within 120 days of the Board Chairman's denial of the motion for reconsideration, such that, per *Rosler*, the NOA was timely filed with the Court. *Id.*

Unlike *Jaquay*, subsequent decisions by the Federal Circuit on equitable tolling did not involve the misfiling of an administrative motion for reconsideration by the Board Chairman and a *Rosler* abatement of the 120-day appeal period. *Santana-Venegas v. Principi*, 314 F.3d 1293, 1295 (Fed. Cir. 2002), involved an NOA that was timely, yet misfiled at the RO from which the claim originated. Twenty days after the 120-day period expired, the RO informed the appellant that he had to file his NOA with the Court, and the appellant thereafter filed his NOA with the Court 21 days later. A single-judge order of this Court dismissed his appeal as untimely. *Id.* at 1295-96. In reversing, the Federal Circuit, inter alia, (1) reiterated that the due diligence requirement for equitable tolling was more relaxed when a pro se, prospective appellant timely misfiled a pleading, (2) again noted that internal VA policies governed the forwarding or return of misdirected mail, (3) held that a prospective appellant's misfiling of an NOA with the RO from which the claim originated showed an intent to seek redress of the Secretary's action and was not a garden variety claim of excusable neglect, and (4) further held, as a matter of law, that the misfiling of an NOA at the RO from which the claim originated constituted due diligence. Of note, the Federal Circuit's decision is devoid of any implication or charge that the appellant had not filed with the Court promptly after learning he had misfiled his NOA.

Following *Jaquay* and *Santana-Venegas*, this Court was faced with a situation in *Reed* that involved a prospective appellant who mailed his NOA to "General Counsel (027)" approximately one month before the expiration of the 120-day appeal period, although (apparently as a result of mailing delays related to an anthrax scare) it was not received by the OGC until 9 days after the appeal period had expired, and was not forwarded by OGC and received by the Court for another 4 days.[3] 17 Vet.App. at 381. The Court acknowledged that equitable tolling was permitted for NOA misfilings at the RO within the 120-day appeal period pursuant to *Santana-Venegas*, but held that

---

[3] Our concurring colleagues correctly note that *Reed* involved an untimely misfiling. However, the analysis in that decision was not predicated on the fact that it was untimely.

4

Mr. Reed's filing of an NOA at the OGC did not warrant similar treatment. The Court based that distinction on essentially four factors: (1) The OGC – unlike the RO – was an office "with which [the prospective appellant] had no familiarity," (2) prospective appellants filing NOAs have moved from the nonadversarial VA administrative system to a Federal court with adversarial process, (3) the OGC had acted promptly in forwarding Mr. Reed's NOA to the Court, and (4) Mr. Reed was warned in the NAR that filing with the OGC would not protect the right to appeal to the Court. 17 Vet.App. at 385.

*Reed* was not appealed, but, three days after *Reed* was issued, the Federal Circuit provided additional guidance on key criteria for applying equitable tolling in cases involving timely misfiled NOAs. *See Bailey (Edward)*, 351 F.3d at 1385. The appellant in *Bailey (Edward)*, through his state veterans service representative, mailed his NOA[4] to the RO from which his claim originated within the 120-day appeal period. *Id.* at 1383. After receiving no response from the RO for almost six months, the appellant submitted an NOA to the Court. *Id.* Although a single-judge decision of this Court found that the appellant – by using the wrong form and sending it to the wrong location – had not exercised due diligence to warrant equitable tolling, the Federal Circuit again found that filing the NOA with the RO from which the claim originated satisfied the due diligence requirement as a matter of law. *Id.* at 1385. More specifically, the Federal Circuit found the errors in form and location of filing inapposite, stating that

> [a]s long as the veteran's intention is clear and [VA] is put on notice of his intention to seek further review of his claim, an error in the form or in the office to which it is sent, or both, is not sufficient to render the filing ineligible for consideration under the equitable tolling doctrine.

*Id.* Thus, rather than the factors found significant in *Reed*, the Federal Circuit emphasized in its analysis: (1) Due diligence; (2) the prospective appellant's intention to appeal; and (3) VA's being put on notice of that intent to appeal. Moreover, he filed his NOA at the Court promptly after inquiring as to the status of his appeal at the Court. *Bailey (Edward) v. Principi*, No. 01-1116, 2002 WL 1269893, at *1 (Vet. App. May 31, 2002) (mem. dec.).

Shortly thereafter, the Federal Circuit in *Brandenburg* again instructed that "the focus [of equitable tolling analysis is] whether the veteran exercised due diligence in preserving his legal rights, and whether the veteran's intention is clear and [VA] is put on notice of his intention to seek further review of his claim." 371 F.3d at 1364 (internal quotation marks omitted). *Brandenburg* involved an appellant who filed his NOA at the Board near the end of the 120-day appeal period. *Id.* at 1363. The RO promptly notified Mr. Brandenburg that he should have filed his NOA with the Court, and Mr. Brandenburg filed an NOA with the Court about three months after such notification. *Id.*

---

[4] Although the claimant submitted his NOA on a Form 9 (Substantive Appeal to the Board), it was "undisputed that Mr. Bailey intended that document to serve as his [NOA] to the Veterans Court." *Id.* at 1383.

In *Brandenburg*, a single-judge decision of this Court held that equitable tolling was unwarranted under *Santana-Venegas* because the appellant filed his NOA at the Board, rather than the RO from which the claim originated. *Id.* Applying the principles enunciated in *Bailey (Edward)*, however, the Federal Circuit found that "there is no meaningful difference between the [RO] and the [B]oard," and held that equitable tolling "may apply when an appellant timely misfiles [an NOA] with the Board." *Id.* at 1364. Of note, the Federal Circuit specifically recognized that past cases involved misfilings at the RO from which the claim originated, but further noted that "whether equitable tolling applied in each case did not hinge on that particularity." *Id.* Also significant is the fact that the Federal Circuit's decision contained no implication or charge that the three-month period between Mr. Brandenburg being notified by the RO of the proper location to file his NOA and his subsequent filing at the Court reflected a lack of due diligence in pursuing his judicial remedy.

Thereafter, in *Hunt v. Nicholson*, this Court recognized that the Federal Circuit, in effect, had established three criteria for equitable tolling in misfiling cases:

> It is clear from the law developed by the Federal Circuit that in cases involving an appellant who misfiles his NOA at a place other than this Court, three criteria must be satisfied before equitable tolling may be allowed: (1) the claimant must have exercised due diligence in pursuing his legal rights; (2) the misfiled document must reveal a clear intention by the claimant to seek further review; and (3) the misfiled document must put VA on notice of the claimant's intention.

20 Vet.App. 519, 524 (2006).

Read together, *Santana-Venegas*, *Bailey (Edward)*, *Brandenburg*, and *Hunt* stand for the proposition that equitable tolling is predicated primarily on the due diligence of the prospective appellant as opposed to the particularity of the location at which the prospective appellant misfiles his or her NOA and that the due diligence requirement is relaxed in cases of timely misfilings by pro se, prospective appellants. Thus, to the extent that *Reed* stands for the proposition that equitable tolling based on a misfiled NOA applies only when the misfiling is at the RO that processed the claim or at the Board, or that timely misfilings at the OGC are not subject to equitable tolling per se, such holdings are overturned, consistent with the Federal Circuit precedents cited above. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 173 (1989) (where the "growth of judicial doctrine" has "removed or weakened the conceptual underpinnings from the prior decision . . . , the Court has not hesitated to overrule an earlier decision"); *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (panel decisions constitute binding precedent unless overturned by, inter alia, the full Court or the Federal Circuit). Further, to the extent *Reed* considered the promptness of Agency action in informing the prospective appellant of the misfiling as a factor that weighed against equitable tolling, we further hold that this factor has no bearing against an individual's due diligence.

6

### B. The Criteria for Equitable Tolling in Cases of Timely Misfilings

The Court's summation in *Hunt* of the Federal Circuit's criteria for assessing whether equitable tolling is warranted in the case of a timely misfiling remains intact, but requires further elaboration in light of our holding today that *Reed* has been overtaken by Federal Circuit caselaw. Moreover, although not included in *Hunt*'s enumerated list of criteria for equitable tolling, a timely misfiling is a necessary criterion in application of the test recognized by the Court in *Hunt*. Thus, the Court is required to address each of these *four* criteria when assessing whether equitable tolling is warranted in such a situation.

#### 1. Timely Misfiling

Although not a focus of the above-cited Federal Circuit cases addressing equitable tolling, a necessary factual predicate in all those cases – except *Jaquay*, which involved an administrative motion for reconsideration by the Board Chairman – was the filing of a purported NOA at a location other than the Court *within the 120-day judicial appeal period. See Brandenburg*, *Bailey (Edward)*, and *Santana-Venegas*, all *supra* (all involving a misfiling within the 120-day period); *see also Hunt*, 20 Vet.App. at 524 (distilling from those Federal Circuit decisions the criteria for equitable tolling "in cases involving an appellant who misfiles his NOA at a place other than this Court").

A prospective appellant must demonstrate with independent proof (i.e., evidence beyond his or her bare assertion) that the NOA was misfiled–i.e., filed at a location other than the Court–within the 120-day filing period. *Fithian v. Shinseki*, 24 Vet.App. 146, 151 (2010) (requiring independent proof of mailing to invoke a presumption of receipt under the common law mailbox rule or to rebut an established Agency presumption of regularity with respect to handling incoming mail). Indeed, to hold otherwise would create a lesser burden to establish timeliness for prospective appellants who misfile an NOA than the burden for those who deliver or mail an NOA to the Court. *See*, *e.g.*, *Rios v. Nicholson*, 490 F.3d 928, 931-34 (Fed. Cir. 2007) (recognizing that common law mailbox rule is for application), *on remand at Rios v. Mansfield*, 21 Vet.App. 481, 482 (2007) (outlining when common law mailbox rule is for application). We note that the date of a misfiling frequently will be established by a preliminary record or affidavit filed by the Secretary. *See, e.g., Barrett v. Nicholson*, 466 F.3d 1038, 1042-44 (Fed. Cir. 2006).

Moreover, we further hold today that the rules that apply to determining whether an NOA filed in this Court is timely (i.e., date of receipt of an NOA or the date of the mailing as reflected by a USPS postmark, *see* 38 U.S.C. § 7266(c), or by application of the common law mailbox rule, *see Rios v. Mansfield*, *supra*) will be used to determine whether an NOA was timely misfiled at another location. In this regard, we overrule *Reed*'s holding that the statutory postmark rule in section 7266(c) does not apply to an NOA that was misfiled at another location. *See Reed*, 17 Vet.App. at 383.

## 2. Intent To Appeal

A prospective appellant's intent in filing a document can be discerned from the form and content of the purported NOA and the circumstances surrounding the filing of that document. *See Fithian*, 24 Vet.App. at 157 ("The Court . . . does have the authority, in determining whether a timely NOA has been filed, to also determine whether a document is a motion for reconsideration."); *Kouvaris v. Shinseki*, 22 Vet.App. 377, 379 (2009) (examining "'the document as a whole and the circumstances of its filing'" to discern whether a document was intended to be an NOA (quoting *Durr v. Nicholson*, 400 F.3d 1375, 1381 (Fed. Cir. 2005))). The Court's Rules of Practice and Procedure provide, in pertinent part, that an NOA

>    (1) should show the name, address, and telephone number of the person or persons
>    making the appeal, and the appropriate [VA] claims file number; [and]

>    (2) shall reasonably identify the Board decision appealed from and be capable of
>    being reasonably construed, on its face or from the surrounding circumstances, as
>    expressing an intent to seek Court review of that decision[.]

U.S. VET. APP. R. 3(c). These requirements, however, have not been strictly construed, so that an individual's failure to include his or her telephone number, for example, does not necessarily prove fatal. *See Kouvaris*, 22 Vet.App. at 379.

The requirement that an NOA reflect a clear intent to appeal to the Court is particularly important because a claimant for VA benefits has several options when the Board denies the benefit sought – e.g., a motion for reconsideration by the Board Chairman, a request to reopen, or an appeal to the Court – such that the filing of the document at VA itself can connote a lack of intent to seek judicial review if the document does not reveal a clear intention by the individual to seek further review at the Court. *See Brandenburg*, 371 F.3d at 1364; *Bailey (Edward)*, 351 F.3d at 1385; *Boone v. Shinseki*, 22 Vet.App. 412, 414 (2009) (examining the "circumstances surrounding its filing" to determine whether a document is an NOA or otherwise). Nevertheless, use of the Court's NOA form or any specific language is not required, and any filing must be construed liberally in the context of its language and circumstances of filing. *See Posey v. Shinseki*, 23 Vet.App. 406, 408 (2010); *Kouvaris*, 22 Vet.App. at 379 (noting that "the failure to explicitly ask for judicial review, or state that one is appealing, does not necessarily mean that a document filed with the Court will not be considered an NOA"); *id.* at 380 (finding that document filed at the Board, even liberally read, was not a misfiled NOA).

## 3. Notice to VA of Intent To Appeal

The purported NOA must also place the Secretary on notice of the individual's intent to seek further review of his or her claim. *See Brandenburg*, *Bailey (Edward)*, and *Hunt*, all *supra*. The Court's consideration of this criterion, like the issue of whether an individual intended to appeal an adverse Board decision, requires a factual determination based on a liberal reading of the misfiled document, as well as consideration of the circumstances surrounding its filing. *See Boone*, *supra*.

### 4. The Relaxed Due Diligence Requirement

In *Brandenburg*, the Federal Circuit made clear that "the focus [of an equitable tolling analysis is] whether the veteran exercised due diligence in preserving his legal rights," 371 F.3d at 1364 (internal quotation marks omitted), and, in *Santana-Venegas* and *Jaquay*, the Federal Circuit indicated that the due diligence requirement for a pro se appellant who timely misfiles is "relaxed," 314 F.3d at 1297; 304 F.3d at 1287. As discussed below, we hold that the due diligence assessment in timely misfiling cases is based on a totality of circumstances. Although the Court will not now endeavor to provide an exhaustive list of factors to consider in a due diligence analysis, we will elaborate on two such factors that are particularly relevant in cases of timely misfiled NOAs and that come into play in Mr. Rickett's case: The location of the misfiling and any corrective actions that the prospective appellant takes after learning of the misfiling.

### a. Location of Misfiling

The Federal Circuit clearly has held that a prospective appellant exercises due diligence as a matter of law at the point in time when he or she files an NOA within the 120-day appeal period at the RO from which the claim originated or the Board. However, there is little guidance from the Federal Circuit as to when a misfiling at another location might reflect due diligence. Although familiarity with the particular location where the NOA was misfiled is not a determinative or required factor when assessing whether a misfiling is eligible for equitable tolling, *see Bailey (Edward)*, 351 F.3d at 1385, we believe the prospective, pro se appellant nevertheless must demonstrate a reasonable basis for the misfiling. The Federal Circuit noted in *Brandenburg* that there was "no meaningful difference between the [RO] and the [B]oard" for purposes of evaluating a prospective appellant's diligence. 371 F.3d at 1364. In certain circumstances, there may be misfilings of an NOA at other VA offices that might reflect due diligence. As such, the reasonableness assessment will consider the prospective appellant's reasons for believing that such a location might be appropriate for obtaining judicial review or filing an appeal of a decision on veterans benefits. We address below whether the filing in this instance at the "Office of General Counsel (022D)" reflects relaxed due diligence on the part of Mr. Rickett.

### b. Actions Taken After Learning of Misfiling

The Federal Circuit has not discussed what actions taken by a prospective appellant after learning that he or she misfiled an NOA at the wrong location constitute due diligence. Although the Federal Circuit noted in *Jaquay* that Mr. Jaquay's actions after the misfiling were not for consideration in the equitable tolling assessment of that case, *Jaquay* involved (1) a misfiling – at the RO instead of the Board – of a motion for reconsideration by the Board Chairman, during the administrative and nonadversarial portion of the VA benefits adjudication process, and (2) the question whether such a misfiling would abate the finality of the Board decision for purposes of appealing to the Court per *Rosler*. 304 F.3d at 1288. Specifically, *Jaquay* did *not* involve the misfiling of an NOA. Indeed, actions taken after learning of a misfiling are relevant in the context of NOAs because Congress has provided that the Court may not hear an appeal unless an NOA is filed with the Court. *See* 38 U.S.C. § 7266(a) (NOA must be filed at the Court "to obtain review by

9

the Court"). Although an NOA may – in circumstances outlined by statute – be deemed filed with the Court, the NOA must be either delivered to the Court or, if mailed, addressed to the Court. 38 U.S.C. § 7266(c) (NOA deemed received by the Court "if the [NOA] is delivered" to the Court or "if the [NOA] is properly addressed to the Court and is mailed" with a legible USPS postmark); *see also* U.S. VET. APP. R. 4(a); *Rios*, *supra* (common law mailbox rule applies). Thus, under the terms of the statute, receipt of an NOA by the Secretary does not constitute filing with the Court, which stands as an independent, judicial body, wholly separate from VA.

Within the administrative and nonadversarial portion of the VA benefits claims and appeal process, the Secretary has the duty to assist and has enacted policies with regard to forwarding misdirected mail within the Agency, such that there is no doubt that a VA RO, which adjudicates claims, has the duty to transfer a misfiled administrative motion for Board Chairman reconsideration to the proper VA office. *See Jaquay*, 304 F.3d at 1288 (citing misdirected mail policies in the M21-1, the then-existing *VA Adjudication Procedures Manual*); M21-1MR, pt. I, ch. 1, sec. 1.05 (ROs contain divisions that carry out the functions of the Veterans Benefits Administration); *see also* 38 U.S.C. § 5103A. Moreover, the doctrine of laches does not apply to a veteran's failure to pursue his claim when the delay is caused by the Secretary's failure to take required action, *see Browder v. Derwinski*, 1 Vet.App. 204, 208 (1991) (noting that "the VA benefits system, as well as the Veterans' Judicial Review Act both militate against the application of the [laches] doctrine to cases before this Court") (citing *Manio v. Derwinski*, 1 Vet.App. 140, 144 (1991)), such as the Board Chairman's rendering of a decision on reconsideration, 38 U.S.C. § 7103. In the context of a motion for Board reconsideration, it is not surprising that the Federal Circuit deemed irrelevant Mr. Jaquay's postmisfiling actions. The timely misfiling of the motion for reconsideration by the Board Chairman – an action internal to VA – at the RO where the claim originated instead of with the Board Chairman abates the finality of the Board decision for *Rosler* purposes, and the time to file an NOA with the Court does not begin anew until the Chairman denies the motion for reconsideration. As noted by the Federal Circuit, after he was notified that his motion was denied, Mr. Jaquay filed his NOA with the Court within the new 120-day appeal period.

Unlike the timely misfiling of a motion for reconsideration by the Board Chairman – an internal matter within VA – the timely misfiling of an NOA with VA does not abate the finality of a Board decision, and the date of that misfiling is not the operative date for a filing at the Court because the NOA still must be filed at the Court for a judicial appeal to proceed. *See* 38 U.S.C. § 7266(a), (c); *Rios*, *supra* (common law mailbox rule applies). Otherwise stated, filing an NOA commences a judicial appeal and its adversarial process, an action decidedly not within VA. Indeed, VA is an executive branch agency and the Secretary is an adverse party in litigation before the Court, which exercises the judicial power of the United States. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 889 (1991) (holding that Article I courts "exercise the judicial power of the United States"). Moreover, the availability of equitable tolling in cases of misfiled NOAs is not based on VA's duty to assist or other internal VA policies, but on the due-diligent pursuit of judicial remedies by the prospective appellant. *See Bailey (Howard)*, 160 F.3d at 1364.

Therefore, although a prospective appellant exercises due diligence as a matter of law at the point in time when he or she files an NOA within the 120-day appeal period at the RO from which

the claim originated, the Board, or possibly other locations within VA, we believe that a prospective appellant's actions taken after learning of the misfiling are factors in the "relaxed" due diligence assessment. This view is not inconsistent with *Santana-Venegas* and *Brandenburg*; those decisions specifically noted the time between the appellant learning of the misfiling and the proper filing at the Court. *See Santana-Venegas*, 314 F.3d at 1295-96 (RO informed prospective appellant that he had misfiled his NOA, and he filed at the Court 21 days later); *see also Brandenburg*, 371 F.3d at 1363 (RO informed prospective appellant that he had misfiled his NOA, and he filed at the Court within 3 months). Significantly, those cases did not contain the explicit statement of *Jaquay* that postmisfiling actions were not relevant.[5]

Accordingly, we hold that the due diligence assessment, which is "relaxed" in cases of timely misfilings by pro se, prospective appellants, is based on the totality of the circumstances surrounding the misfiling and actions taken after learning of the misfiling, which culminate in the ultimate filing of an NOA with the Court – either because the Secretary forwarded a misfiled NOA to the Court, or because the prospective appellant subsequently filed an NOA with the Court. *See* 38 U.S.C. § 7266(a), (c); *Rios*, *supra* (common law mailbox rule applies).

Our holding today is made in the context of Federal Circuit precedents and in furtherance of our rulemaking authority. *See* 38 U.S.C. § 7264. As stated in *Henderson III*, 131 S. Ct. at 1206, the 120-day appeal period is an "important procedural rule," and equitably tolling this important rule cannot be based solely on a timely misfiling at any location outside the Court, possibly followed by inaction for many years after learning of the misfiling. To do so would subjugate the important rule that requires filing of a timely NOA with the Court to the control of others and give little meaning to the term "relaxed due diligence" and the requirement that prospective appellants diligently pursue judicial review to invoke equitable tolling. *See Bove*, 25 Vet.App. at 143 ("[I]t is the role of Congress and the Court . . . to enforce or adjust the 'important procedural rule' prescribed by Congress in section 7266."); *see also In re Violation of Rule 28(c)*, 388 F.3d 1383, 1385 (Fed. Cir. 2004) ("[I]n order to get its work done, [a court] must insist on strict compliance with its rules. Violations . . . are all too frequent . . . , impos[e] an unfair burden on opposing parties . . . , [and] burden the court."). Accordingly, when an NOA is timely misfiled, we find it reasonable and prudent to hold that the due diligence assessment for equitable tolling of the time to file an NOA with the Court must be based on the totality of the circumstances, including whether there was a reasonable basis for the pro se, prospective appellant to file his or her NOA at a location other than

---

[5] In this decision, we decline to address and leave for another day the question whether relaxed due diligence is required for the period between a timely misfiling and learning that the NOA was misfiled in the wrong location. Although not necessary to our holding, we observe that – if relaxed due diligence were required between his timely misfiling and learning that he had misfiled – then Mr. Rickett's actions during that period would appear to have satisfied that requirement. *See e.g.*, *Brandenburg*, 371 F.3d at 1363 (RO informed prospective appellant 23 days after his misfiling that he had misfiled his NOA, and he then filed at the Court within 3 months); *Bailey (Edward)*, 351 F.3d at 1383 (prospective appellant filed NOA at Court 6 months after no response from filing at RO); *Santana-Venegas*, 314 F.3d at 1295-96 (RO informed prospective appellant 70 days after his misfiling that he had misfiled his NOA, and he filed at the Court 21 days later).

11

the Court, and whether he or she showed the necessary relaxed due diligence after learning of such misfiling.

### C. Application to Mr. Rickett's Case

#### 1. Timely Misfiling

There is no dispute, and the record reflects, that Mr. Rickett's purported NOA was received by the "Office of General Counsel (022D)" on January 26, 2009, with more than 50 days remaining in the appeal period.

#### 2. Intent To Appeal

Mr. Rickett's purported NOA included what he believed was his VA claims file number and stated that he wanted to appeal "this to the Courts." PR at 1. He included his full name, and the envelope in which the document was sent bore his mailing address. PR at 1, 3. Although the document was not filed at the Court, the circumstances surrounding Mr. Rickett's submission – namely, his filing two months after an adverse Board decision and his invoking the words "appeal" and "Courts" – reflect an intent to appeal. *See Boone*, 22 Vet.App. at 414 (examining "the document and the circumstances surrounding its filing" to determine whether it was an NOA). Taken as a whole, Mr. Rickett's January 2009 letter reveals a clear intention to seek further review at the Court and, therefore, the Court is satisfied that the document meets the content requirements of an NOA. *See Bailey (Edward),* 351 F.3d at 1385; *see also Brandenburg*, 371 F.3d at 1364. *Compare Calma v. Brown*, 9 Vet.App. 11, 15 (1996) (statement appealing Board Chairman's denial of reconsideration held to be an NOA because prospective appellant's intent clearly was "to pursue his claim to the next appropriate level in the system"), *and Chadwick v. Derwinski*, 1 Vet.App. 74, 76 (1990) (statement filed with Board held to be an NOA because "it requested review by the Court"), *with Kouvaris*, 22 Vet.App. at 380 (statement filed with Board not an NOA because "it lacked any indicia of intent to seek review by the Court"), *and Boone*, 22 Vet.App. at 414 (statement filed with RO not an NOA because it "evidenced no clear intent to seek judicial review").

Although the Secretary argues that Mr. Rickett's letter addressed to an office within OGC, specifically 022D, reflects no clear intent to appeal to the Court, the misfiled letter specifically noted an intent to "appeal this to the Courts." PR at 1. When a prospective appellant's letter reflects an intent to appeal to the courts, the location to which the letter was addressed is not determinative of whether the letter constitutes an NOA. *See Chadwick*, *supra*. Moreover, as to the Secretary's suggestion that the terms "this" and "Courts" render the document ambiguous as to what decision Mr. Rickett was appealing and what court he was appealing to, such a technical reading ignores common sense, contravenes the Secretary's duty to read pro se filings sympathetically, and is not supported by the OGC's and RO's actions. *See Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir. 2005); *Kouvaris*, 22 Vet.App. at 379; *cf. Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (complaints shall not be dismissed based on "'time-consuming and justice-defeating technicalities'" (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.3d 514, 517 (Fed. Cir. 1955))). The actions of the OGC in forwarding Mr. Rickett's letter to the RO reflect an understanding that Mr. Rickett's

use of "this" referred to his claim for VA benefits, and the RO's stamping of the document as "appeals" and placing it in a locked cabinet where files are held following a Board decision reflect an understanding that the document was an appeal following a Board decision. Moreover, the Secretary's suggestion at oral argument that the professionals in Group II of the OGC, the section of OGC to which his envelope was addressed, may have been confused and thought that Mr. Rickett intended to appeal his claim to the Federal Circuit or some other court strains credulity.

### 3. Notice To VA of Intent to Appeal

Mr. Rickett's letter also put the Secretary on notice of his intention within the 120-day period to file an appeal. *See Bailey (Edward)*, 351 F.3d at 1385 (equitable tolling warranted where, inter alia, "[VA] is put on notice of [a prospective appellant's] intention to seek further review of his claim"). To the extent the Secretary argues that the document's receipt at OGC (022D) does not put "VA on notice," his argument is not persuasive. *Id.* That document expressly states that Mr. Rickett wished to appeal to the courts, was associated readily with Mr. Rickett's claim, and was forwarded to the RO where it was stamped "appeals." We have no doubt that Mr. Rickett's filing with OGC (022D) put the Secretary on notice of Mr. Rickett's intent to seek review in this Court. *See Fithian*, *supra*; 38 C.F.R. § 14.500 (2012) ("Functions and Responsibilities of General Counsel").

### 4. Relaxed Due Diligence

#### a. *Location of Misfiling*

Mr. Rickett mailed his NOA to the "Office of General Counsel (022D)," which is an address on the NAR attached to the November 5, 2008, Board decision that was provided to Mr. Rickett by the Secretary. The NAR indicates that this address is for the office within VA, Professional Staff Group II (Group II), that, inter alia, handles fee agreements between appellants and attorneys or accredited agents for representation at the Court.[6] Although the NAR notes that the OGC address is to be used for filing attorney fee agreements, Mr. Rickett asserts that the small print, multiple addresses, and overwhelming amount of information provided on the NAR confused him. While

---

[6] Professional Staff Group II

has overall responsibility for providing advice concerning VA's multi-billion-dollar programs of disability and death compensation and pension for Veterans and their survivors, and Federal life-insurance programs for service members and Veterans. In addition, the group is responsible for all legal advice concerning the national cemetery system (except land acquisition, which is handled by [Professional Staff Group] V) and various burial benefits administered by the Veterans Benefits Administration. The group is also responsible for reviewing proposed and final rules for all VA programs to ensure compliance with the Administrative Procedure Act, and other statutes and orders governing rulemaking.

*Evaluating the U.S. Department of Veterans Affairs Office of General Counsel: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Veterans' Affairs*, 111th Cong. 26 (2010) (statement of Will Gunn, General Counsel, U.S. Dep't of Veterans Affairs).

such an excuse likely would constitute "a garden variety claim of excusable neglect" if proffered by an attorney, *Irwin*, 498 U.S. at 96, the due diligence requirement for a pro se appellant's timely misfiling is relaxed. *See Santana-Venegas*, 314 F.3d at 1297; *Bazalo v. Brown*, 9 Vet.App. 304, 310-11 (1996) (noting that counsel is held to a higher standard than pro se appellants in following rules and statutes), *rev'd on other grounds*, 150 F.3d 1380 (Fed. Cir. 1998).

This Court previously found in *Bobbitt v. Principi*, 17 Vet.App. 547, 548 (2004), that equitable tolling applied where an NOA was timely misfiled at the Board notwithstanding the clear instructions on the NAR that "*Filing a copy of your [N]otice of Appeal with the General Counsel, the Board, or any other VA office WILL NOT protect your right to appeal to the Court*." As we reasoned with regard to a misfiling at the Board in *Bobbitt*, we likewise find here that, despite the NAR, it is understandable that an appeal of a Board decision might be filed by a pro se, prospective appellant with OGC Group II (022D). The complete mailing address for OGC (022D) appears in bold type centered at the bottom of the last page of the NAR that Mr. Rickett received with the Board decision. In mailing his letter to this particular OGC group within VA, Mr. Rickett made some showing of a diligent effort, even erroneously, to follow the directions for filing an appeal.

b. *Actions Taken After Learning of Misfiling*

It is undisputed that Mr. Rickett (1) contacted the Court as to the status of his appeal approximately one month after the 120-day appeal period expired, and (2) filed a new NOA with the Court promptly upon learning his mistake in mailing his original NOA to the OGC.[7] Accordingly, we conclude that his actions taken after learning of the misfiling reflect "relaxed" due diligence that culminated in the ultimate filing of an NOA with the Court.

### III. CONCLUSION

In conclusion, we find that – under the totality of the circumstances – Mr. Rickett's letter of January 8, 2009, which was misfiled with the OGC within the 120-day judicial appeal period, adequately expressed his intent to appeal his adverse Board decision and put VA on notice of that intent. We also find that Mr. Rickett's prompt action in filing his NOA with the Court after learning of the misfiling constitutes "relaxed" due diligence. Thus, equitable tolling of the 120-day appeal period is warranted, and his appeal is accepted.

Accordingly, it is

ORDERED that the Secretary's July 28, 2009, motion to dismiss the appeal is denied. It is further

---

[7] As explained in note 5, *supra*, we decline to address in this decision whether relaxed due diligence was required of Mr. Rickett between his timely misfiling at the wrong location and his learning that he had misfiled.

ORDERED that the Secretary, not later than 30 days after the date of this order, file a notice certifying that the appellant was served with a copy of the record before the agency, U.S. VET. APP. R. 10(a). Thereafter, both parties should proceed in accordance with the Court's Rules of Practice and Procedure. It is further

ORDERED that, upon the Secretary's filing of the Rule 10 notice, this matter is returned to the Clerk for further assignment to a single Judge in the normal course.

DATED:   March 12, 2013                                    PER CURIAM.


HAGEL, *Judge*, with whom LANCE, *Judge*, joins, concurring in the result: We concur in the result reached by the majority because Mr. Rickett's Notice of Appeal was received by a location approved by the Federal Circuit within the 120-day appeal period and because, after he was notified of the misfiling, his Notice of Appeal was received by Court within a period of time shorter than those already deemed acceptable by the Federal Circuit. We write separately, however, to express several points of diversion from the reasoning in the majority opinion.

As explained below, the road between us forks at four locations. First, *Reed v. Principi*, 17 Vet.App. 380 (2003), has no bearing on this case. Second, the majority's inquiry into due diligence beyond the timely misfiling of the Notice of Appeal is unnecessary in determining entitlement to equitable tolling in the case of a timely but misfiled Notice of Appeal. Third, the application of existing caselaw resolves this appeal without the need for further discussion. Fourth, the majority appears to expand, without sufficient guidance, the judicially approved locations for misfiling a Notice of Appeal beyond those already sanctioned by this Court and the Federal Circuit.

## A. Unnecessary Use of *Reed*

First and foremost, because *Reed* concerned an *untimely* misfiling of a Notice of Appeal with the VA Office of the General Counsel, it is crystal clear that *Reed* has no bearing on the outcome of Mr. Rickett's request for equitable tolling of his *timely* misfiled Notice of Appeal. In fact, the majority appears to recognize this when it states that "*a timely misfiling is a necessary criterion* in application of the test recognized by the Court in *Hunt* [*v. Nicholson*, 20 Vet.App. 519 (2006)]." *Ante* at 7 (emphasis added). Nevertheless, the majority appears to ignore its own unequivocal statement to find that *Reed* must be overruled.

Likewise, *Reed* is easily distinguishable from the Federal Circuit cases on which the majority relies, because each of those cases also involved timely misfilings. Thus the majority's use of *Reed* as the launching pad for its decision is improvident at best.

## B. Use of Post-Misfiling Actions to Prove Diligence

### *1. Misapplication of Federal Circuit Precedent*

Second, in our view, the majority's conclusion that an appellant must demonstrate postmisfiling due diligence (and during two distinct periods of time, as discussed further below)

directly contradicts the position the Federal Circuit has consistently expressed in its caselaw. From the Federal Circuit cases, we think it clear that, as the Court concluded in *Hunt*, three things must be present before equitable tolling is warranted in cases of timely misfilings of Notices of Appeal: (1) Intent to appeal, (2) sufficient notice to VA of that intent, and (3) due diligence in pursuing an appeal *to this Court*.[8] We also think it clear, however, given the Federal Circuit's repeated reliance on *Jaquay v. Principi*, 304 F.3d 1276 (Fed. Cir. 2002), and the fact that it *reversed*, rather than *vacated*, this Court's dismissals in that case and the cases that followed, that the diligence factor is satisfied *as a matter of law* where the purported Notice of Appeal is misfiled at the Board or the regional office where the claim originated within the 120-day appeal period without regard for the postmisfiling actions of the appellant. *See Brandenburg*, 371 F.3d at 1364; *Bailey (Edward) v. Principi*, 351 F.3d 1381, 1384 (Fed. Cir. 2003); *Santana-Venegas v. Principi*, 314 F.3d 1293, 1297 (Fed. Cir. 2002); *see also Jaquay*, 304 F.3d at 1288.

The majority's repeated emphasis on the Federal Circuit's silence regarding postmisfiling actions in *Santana-Venegas*, *Bailey (Edward)*, and *Brandenburg* ignores the fact that *no discussion of postmisfiling actions was necessary* in those cases because, as the Federal Circuit repeatedly stated in those cases, the timely misfiling of a Notice of Appeal at the Board or the regional office where the claim originated *satisfied the diligence requirement as a matter of law*. *See Bailey (Edward)*, 351 F.3d at 1385; *Santana-Venegas*, 314 F.3d at 1297-98; *Jaquay*, 304 F.3d at 1288-89; *see also Brandenburg*, 371 F.3d at 1364. The majority rests its determination that postmisfiling actions are relevant on the fact that the Federal Circuit "specifically noted the time between the misfiling and the proper filing at the Court" in the various cases that followed *Jaquay*. *Ante* at 11. Although technically correct, the majority ignores that the Federal Circuit "specifically noted" this information in its recitation of the facts of each case, not its analysis. *See Brandenburg*, 371 F.3d at 1363; *Bailey (Edward)*, 351 F.3d at 1383; *Santana-Venegas*, 314 F.3d at 1295-96. To add, as the majority does, an additional requirement of diligence beyond the timely misfiling itself not only ignores the law established by the Federal Circuit, but also establishes yet another element that must be proven by the appellant before a timely misfiled Notice of Appeal will meet the due diligence requirement.

### 2. Creation of Distinct Periods of Required Due Diligence

As noted briefly above, the rule the majority announces today creates two distinct periods during which an appellant must demonstrate due diligence. Although the majority purportedly accepts the Federal Circuit's repeated ruling that an appellant demonstrates due diligence as a matter of law through the timely misfiling of a Notice of Appeal (at possibly indeterminate locations, as will be discussed below), the majority holds that the appellant does so only with respect to "the point in time when he or she files a[] [Notice of Appeal] within the 120-day appeal period at the [regional office] from which the claim originated, the Board, or possibly other locations within VA." *Ante* at 10-11. The majority then creates *a second period* (and hints at a third) during which an appellant must *also* demonstrate some broad concept dubbed "relaxed due diligence"–between the time the appellant discovers the misfiling and the time the appellant actually files the Notice of Appeal with

---

[8] To the extent that *Brandenburg v. Principi* conflated intent to appeal and notice to VA of that intent, *see* 371 F.3d 1362, 1364 (Fed. Cir. 2004) ("[i]f the veteran meets *both* criteria . . ."), we believe, practically, that it matters not whether they are separate factors or a single factor.

the Court–and has done so without explaining the criteria by which that diligence is to be judged . *See ante* at 11.[9] We think this tremendously unwise, as it will necessarily lead to either a plethora of divergent single-judge decisions or a series of panel decisions attempting to define the new standard by means of a thousand cuts. In either case, absent clear congruence with a prior precedent decision, the ultimate question of whether an appeal that has, as a matter of law, been diligently pursued will unlock the courthouse doors remains uncertain in every case.

*3. Conceptual Agreement with Majority*

The fact that we agree with the Federal Circuit that an appellant demonstrates due diligence through the timely misfiling of the purported Notice of Appeal at the regional office where the claim originated or the Board does not mean that we disagree with the *concept* advanced by the majority that an appellant cannot amble at his own speed toward the Court merely because he has diligently (mis)filed a Notice of Appeal. In fact, we agree with the majority that the time to file the Notice of Appeal "*with the Court*," 38 U.S.C. § 7266(a) (emphasis added), after the appellant becomes aware of the misfiling is not, or ought not be, indefinite. In other words, a Notice of Appeal timely misfiled at a judicially approved location may not be "deemed received" by or "deemed filed" with the Court and thereby automatically permit the Court to consider the appeal on the merits. *See* 38 U.S.C. § 7266(c) ("A notice of appeal shall be deemed to be received by the Court as follows: (1) On the date of receipt by the Court, if the notice is delivered. (2) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed."). Further, we agree with the majority that the *actual filing* of the Notice of Appeal with the Court–that is, the perfection of the appeal–within a reasonably prompt amount of time after notification of misfiling is required. *See* 38 U.S.C. § 7266(a).

Having said that, a review of the Federal Circuit cases discussed above reveals that, after receiving notice of the misfiling, each of the appellants acted reasonably promptly to file his Notice of Appeal.[10] Mr. Rickett filed his Notice of Appeal with the Court no more than 13 days after becoming aware of his initial timely misfiling.[11] This, by our measure, falls well under

---

[9] The majority purports to "leave for another day" the question of whether due diligence must also be shown between the timely misfiling and learning of the misfiling. *Ante* at 11 n.5; *see also ante* at 14 n.7. One is hard pressed to imagine what a prospective appellant might do during that time that could demonstrate due diligence. Obviously, as the Federal Circuit's repeated finding of due diligence as a matter of law in the timely misfiling itself implies, the prospective appellant has already done all be understands to be necessary to pursue his appeal and has no reason to take any additional action until he learns of the misfiling.

[10] Mr. Santana-Venegas took 21 days; Mr. Edward Bailey took fewer than 27 days; Mr. Brandenburg took 91 days.

[11] In fact, Mr. Rickett's Notice of Appeal to the Court appears to have been written and sent the very day he learned of the misfiling. The cover letter attached to his Notice of Appeal, dated April 14, 2009, indicates that he received a return phone call from the Court's Public Office that day, as that letter states, "Thank you for returning my [call] today." Notice of Appeal at 1. Although Mr. Rickett's Notice of Appeal was date-stamped received by the Court on April 17, 2009, by operation of 38 U.S.C. § 7266(c)(b)(2), it is docketed as filed on April 14, 2009, the date of the U.S. Postal Service postmark on the envelope.

17

the various time periods for perfecting an appeal already accepted by the Federal Circuit, and therefore we think entering into a drawn out exercise in expanding established precedent in *this case*, as the majority does, is unwise.

### 4. Exercise of Rulemaking Authority

As a final matter on this point, we note that the majority asserts that the "rule" it announces–presumably the totality of the circumstances test to establish "relaxed due diligence"–is based on the Court's rulemaking authority. *See ante* at 11 ("Our holding today is made in the context of Federal Circuit precedents and *in furtherance of our own rulemaking authority*." (emphasis added)). But because, as noted above, the "relaxed due diligence" standard is like putty–malleable to a judge's individual view–"rule" is hardly the term we would use to describe it. Importantly, the "rule" established by the majority today will, in many cases, act as a gatekeeper to the Court. Consequently, we believe that, if a rule is to be established, it is more properly and prudently done through the amendment of Rule 4(a), which implements 38 U.S.C. § 7266(a). The Court has adopted an orderly process for doing so, which includes the Court's self-imposed solicitation of public comment and the advice of the Rules Advisory Committee that was wisely established at the Court's beginning for this very purpose. *See* 38 U.S.C. § 7264(a) ("The proceedings of the Court of Appeals for Veterans Claims shall be conducted in accordance with such rules of practice and procedure as the Court prescribes."); 28 U.S.C. § 2071(b) ("Any rule prescribed by a court, other than the Supreme Court, . . . shall be prescribed only after giving appropriate public notice and an opportunity for comment."); *In re Rules Advisory Comm.*, 2 Vet.App. 584, 584 (1992) (establishing Rules Advisory Committee to "advise the Court on proposed changes to its Rules of Practice and Procedure and other related matters").

We are, apparently, not alone in this concern. *See Baldrige v. Nicholson*, 19 Vet.App. 227, 249 (Kasold, J., dissenting) ("I question the appropriateness and effectiveness of suggesting in this case detailed procedures that two judges of the Court might prefer, particularly when the Court has established rule-promulgating procedures that generally include the participation of our Rules Advisory Committee and other interested parties."). More recently, three of the judges in the majority have also taken this view. *See also Bove v. Shinseki*, 25 Vet.App. 136, 140 (2011) (per curiam order) (stating that its holding re-establishing pre-*Henderson I* precedent for equitable tolling of the 120-day appeal judicial period "is subject to revision, pursuant to the Court's rule-making authority"). Thus, by our count, five of the judges of the Court–our three colleagues in *Bove* and the two of us–favor a more measured approach to the adoption of such a rule. Why that count does not carry the day remains unexplained.

### C. Application of Existing Precedent Resolves this Appeal

Third, although Mr. Rickett's case may seem unique among the Federal Circuit cases discussed by the majority, in that he timely misfiled his Notice of Appeal at VA's Office of the General Counsel, the issue it presents is easily resolved by the simple application of *Bailey (Edward)*.

In that case, the underlying Board decision was issued on September 18, 2000. On December 28, 2000, 101 days after the Board decision, Mr. Bailey completed a VA Form 9, ordinarily used for filing a Substantive Appeal to the Board from a regional office decision, that the parties agreed was intended to serve as a Notice of Appeal to the Court. Mr. Bailey took the Form 9 to his non-attorney representative at the Georgia Department of Veterans Services, a State agency, who agreed to forward it to the appropriate place. Instead of sending the Notice of Appeal to the Court, however, the representative forwarded it to the regional office where Mr. Bailey's claim originated. The Notice of Appeal was received there on January 3, 2001, 107 days after the Board decision. In June 2001, Mr. Bailey called the Court to inquire as to the status of his appeal and, upon learning that the Court never received his Notice of Appeal, immediately sent a copy to the Court, where it was received on June 27, 2011.

> Later investigation revealed that, although the regional office received Mr. Bailey's Form 9 from the [Georgia Department of Veterans Services] on January 3, 2001, it took no action with respect to that document until October 4, 2001, when Mr. Bailey's new representative contacted the regional office to inquire as to the whereabouts of the notice of appeal. The regional office located the date-stamped Form 9 in its "overflow" file where it had been sitting since it was received from the [Georgia Department of Veterans Services].

*Bailey (Edward)*, 351 F.3d at 1383.

The similarities to Mr. Rickett's case are undeniable. On November 5, 2008, the Board mailed its decision to Mr. Rickett. On January 8, 2009, Mr. Rickett mailed to VA's Office of the General Counsel a document that the majority concludes–and we agree–was intended to serve as a Notice of Appeal. The Office of the General Counsel received Mr. Rickett's Notice of Appeal on January 26, 2009, well before the end of the 120-day judicial appeal period. The Office of the General Counsel forwarded the document to the Waco VA regional office where Mr. Rickett's claim originated, which received it on February 19, 2009, also prior to the expiration of the judicial appeal period. The regional office stamped the document "Appeals" and placed it in a locked cabinet where Board decision files are held for 150 days after a Board decision to maintain their integrity pending appeal to this Court. Neither the Office of the General Counsel nor the regional office advised Mr. Rickett that he had misdirected his Notice of Appeal. In April 2009, after receiving no information regarding his appeal, Mr. Rickett contacted the Court and learned that no Notice of Appeal had been received. To correct his error, he immediately mailed a Notice of Appeal to the Court and attached a copy of his letter to the Office of the General Counsel. The Notice of Appeal was received by the Court on April 14, 2009, again, no more than 13 days after Mr. Rickett learned of his misfiling.

As noted above, the Federal Circuit in *Bailey (Edward)* unequivocally stated that, "as a matter of law, a veteran who attempts to file a [N]otice of [A]ppeal by completing a document that is clearly intended to serve as a [N]otice of [A]ppeal *and who has that document delivered to the regional office from which the veteran's claim originated within the 120-day statutory period for appeal* is entitled to invoke the doctrine of equitable tolling." *Id.* at 1385 (emphasis added); *see Santana-Venegas*, 314 F.3d at 1297-98; *Jaquay*, 304 F.3d at 1288-89; *Bailey (Harold) v. West*, 160 F.3d 1360,

19

1368 (Fed. Cir. 1998); *see also Brandenburg*, 371 F.3d at 1382. In this case, Mr. Rickett's Notice of Appeal reached the regional office where his claim originated within the 120-day judicial appeal period and, as the Federal Circuit has unequivocally found, he has therefore demonstrated diligence in pursuing his appeal to this Court as a matter of law. Mr. Rickett has therefore also met the three *Hunt* requirements for equitable tolling: (1) He acted diligently by (2) timely delivering to the regional office where the claim originated (or the Board) a document intended to serve as a Notice of Appeal (3) that was sufficient to put VA on notice of his intent to appeal the Board decision to the Court. *See Hunt*, 20 Vet.App. at 524; *see also Jaquay*, 304 F.3d at 1288. Accordingly, that is the end of the matter.

### D. Expansion of Acceptable Locations for Timely Misfilings

Law made in a vacuum is fraught with unintended consequences. The majority ignores the Federal Circuit's guidance on acceptable locations for the timely misfiling of a Notice of Appeal that trigger the consideration of equitable tolling:

> Read together, *Santana-Venegas*, *Bailey (Edward)*, *Brandenburg,* and *Hunt* stand for the proposition that equitable tolling is predicated primarily on the due diligence of the prospective appellant as opposed to the particularity of the location at which the prospective appellant misfiles his or her [Notice of Appeal]. Thus, to the extent that *Reed* stands for the proposition that equitable tolling based on a misfiled [Notice of Appeal] applies only when the misfiling is at the [regional office] that processed the claim or at the Board, or that timely misfilings at the [VA Office of the General Counsel] are not subject to equitable tolling per se, such holdings are overturned . . . .

*Ante* at 6. The majority effectively–and impermissibly–eliminates the limitations so far imposed by the Federal Circuit (i.e., that the Notice of Appeal be filed within VA, either at the regional office where the claim was originally filed, *Santana-Venegas*, 314 F.3d at 1297, or at the Board, with which the appellant has previously and most recently dealt in the prosecution of the claim, *Brandenburg*, 371 F.3d at 1364; or, in very limited circumstances, outside VA, such as with a representative of a service organization who provided representation to the appellant throughout the administrative claims process and who forwarded the Notice of Appeal to the regional office where the claim originated, *Bailey (Edward)*, 351 F.3d at 138). At least one part of the majority opinion might also be read to expand the locations for timely misfiling even well outside VA. *See ante* at 7 ("A prospective appellant must demonstrate with independent proof . . . that the [Notice of Appeal] was misfiled–i.e., filed at *a location other than the Court*–within the 120-day filing period." (emphasis added)). In other portions of its opinion, however, the majority appears to limit the possible locations for timely misfilings to VA, although without limiting the locations *within* VA. *See ante* at 9 ("In certain circumstances, there may be misfilings of a[] [Notice of Appeal] at other VA offices that might reflect due diligence."), 10 ("[T]he timely misfiling of a[] [Notice of Appeal] with VA does not abate the finality of a Board decision . . . ."), 10-11 ("[A]lthough a prospective appellant exercises due diligence as a matter of law at the point in time where he or she files a[] [Notice of Appeal] within the 120-day appeal period at . . . possibly other locations within VA, . . ."). Such inconsistency only further confuses the issue.

20

Even more troubling, in eliminating the limitations imposed by the Federal Circuit, the majority offers no guidance for Judges of the Court considering timely misfilings at "locations other than the Court" or "other VA offices," leaving the door open to unnecessary litigation regarding what persons or entities within the vastness of VA may receive a timely misfiled Notice of Appeal.[12] Leaving the determination of such an important question afloat without navigational aids means only that the issue will drift from place to place, carried by the current of multiple decisions of this Court, until it finds permanent anchorage, which will undoubtedly be provided by the Federal Circuit.

In light of the analysis set forth above, we concur only in the result reached by the majority.

SCHOELEN, *Judge,* concurring: Although I concur with my colleagues' conclusion that Mr. Rickett's NOA, misfiled at the OGC within the 120-day judicial appeal period, along with the Court's subsequent receipt of the NOA, warrants equitable tolling,[13] I respectfully dissent from that part of the decision that adopts a totality-of-the-circumstances approach to examining whether an

---

[12] VA employs more than 278,000 people in numerous divisions, including the following: Compensation and Pension, Education and Training, Medical Care, Home Loan Assistance, Research, Insurance, Vocational Rehabilitation, National Cemeteries, General Administration. *See* http://www.va.gov/landing_organizations.htm (last visited Jan 16, 2013); *see also* http://www.va.gov/opa/publications/factsheets/fs_department_of_veterans_affairs.pdf (Jan. 2009 VA Fact Sheet). In delivering medical care alone, VA operates "152 hospitals; 800 community based outpatient clinics; 126 nursing home care units; and 35 domiciliaries." http://www.va.gov/about_va/vahistory.asp (last visited Jan. 16, 2013).

The VA Office of the General Counsel consists of seven professional groups dealing with such diverse legal questions as administrative claims and litigation under the Federal Tort Claims Act; legal services regarding education programs for veterans and their dependents; advice concerning programs of disability and death compensation and pension for Veterans and their survivors; and Federal life-insurance programs for servicemembers and veterans; advice in the areas of health-care eligibility and benefits, medical administration, medical research, labor-management relations, human resources, crimes and police matters, VA-affiliated nonprofit corporations, technology transfer and ethics; equal employment opportunity law, information law, appropriations/fiscal law, and intellectual property law; Government contracts, including procurement, bid protests, and contract litigation; real- and personal-property law; and environmental law. *See Evaluating the U.S. Department of Veterans Affairs Office of General Counsel: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Veterans' Affairs*, 111th Cong. (2010) (statement of Will Gunn, General Counsel, U.S. Dep't of Veterans Affairs).

Ultimately, when an appellant does not follow instructions for properly filing a Notice of Appeal, he places a burden on the system that diverts resources from claims filed by his fellow veterans. In a sympathetic system, it is fair to require the Secretary to train employees in certain offices how to handle a misfiled Notice of Appeal. Beyond a certain point, however, large swaths of VA employees have no meaningful connection to appellate adjudication; training employees of these divisions to recognize a misfiled Notice of Appeal is unreasonable. The expenditure of resources involved in such training would far outstrip the benefit to the rare veteran who, contrary to express instruction, grossly misfiles a Notice of Appeal.

[13] As a result, I also agree with the majority that this Court's decision in *Reed v. Principi*, 17 Vet.App. 380 (2003) – to the extent that it "stands for the proposition that equitable tolling based on a misfiled NOA applies only when the misfiling is at the RO that processed the claim or at the Board, or that timely misfilings at the OGC are not subject to equitable tolling per se, such holdings" – should be overturned. *Ante* at 6.

appellant who timely misfiles an NOA at the RO, the Board, or, as in this case, the OGC, demonstrates due diligence in preserving his rights. In *Brandenburg v. Principi*, the Federal Circuit examined the circumstances when equitable tolling had previously been applied in timely misfiling cases, noting that "the focus was whether the veteran 'exercised due diligence in preserving his legal rights,' . . . and whether 'the veteran's intention is clear and . . . [VA] is put on notice of his intention to seek further review of his claim.'" 371 F.3d 1362, 1364 (Fed. Cir. 2004) (alteration in original) (citations omitted) (quoting *Jaquay v. Principi*, 304 F.3d 1276, 1287 (Fed. Cir. 2002), and *Bailey* (*Edward*) *v. Principi*, 351 F.3d 1381, 1385 (Fed. Cir. 2003)). The Federal Circuit unequivocally stated: "If the veteran meets both criteria, 'an error in the form or in the office to which [notice] is sent, or both, is not sufficient to render the filing ineligible for consideration under the equitable tolling doctrine.'" *Id*. (alteration in original) (quoting *Bailey* (*Edward*), 351 F.3d at 1385).

### A. Conflict With Existing Precedent

The majority now adopts an analysis for determining whether equitable tolling is appropriate, which the Federal Circuit has indicated does not apply to timely misfiled appeals to this Court. That is, although the Federal Circuit did not examine the postmisfiling activities of the veteran in *Brandenburg*, *supra*; *Bailey* (*Edward*), *supra*; and *Santana-Venegas v. Principi*, 314 F.3d 1293 (Fed. Cir. 2002), when assessing whether the veteran satisfied the due diligence requirement, the majority, for the first time, requires an examination of the actions taken by a prospective appellant *after* learning that he misfiled an NOA.

My colleagues attempt to explain their expansion of the Federal Circuit's holdings in *Brandenburg*, *Bailey* (*Edward*), and *Santana-Venegas*, all *supra*, which involved the timely misfiling of an NOA at the RO or the Board, by (1) examining the differences between a timely misfiled motion for reconsideration of a Board decision by the Board Chairman, *see Jaquay*, *supra*, and a timely misfiled NOA, and (2) assigning significance to the Federal Circuit's silence in *Brandenburg* and *Santana-Venegas*. *See ante* at 11 (noting that "those cases did not contain the explicit statement of *Jaquay* that postmisfiling actions were not relevant"). Undoubtedly, there are several differences between a motion for Board reconsideration, an internal VA matter, and an NOA to the Court. *See*, *e.g.*, *Jaquay*, 304 F.3d at 1283-87 (examining the difference between motions for Board reconsideration and NOAs to the Court); *see also* 38 U.S.C. § 7266(a); 38 C.F.R. § 20.1001 (2012). Despite these variances, an examination of the Federal Circuit's decisions demonstrates that the postmisfiling actions of the prospective appellant were not relevant to the Court's due diligence assessment – but, even assuming there was any doubt, I would resolve that doubt in favor of the veteran. *See Henderson v. Shinseki*, 131 S. Ct. 1197, 1205 (2011) (noting that Congress's solicitude for veterans is longstanding and "plainly reflected in the [Veterans' Judicial Review Act], as well as in subsequent laws that 'place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions,'" quoting *Shinseki v. Sanders*, 556 U.S. 396, 416 (2009) (Souter, J., dissenting)).

*1*. Jaquay *and* Santana-Venegas

In *Jaquay*, the Federal Circuit observed that there was a split among its sister circuits, "whether one satisfies *Irwin's* diligence requirement simply by filing the right thing in the wrong place" and that the decision is "not always clear cut." 304 F.3d at 1288; *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (noting that equitable tolling is generally available in two situations: (1) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"). Nonetheless, the Federal Circuit reasoned that it need not get entwined in the split because *Jaquay's* case was different: the misfiling "took place several steps into a claim for benefits." *Jaquay*, 304 F.3d at 1288. Noting that "[m]isfiling cases within the veterans' system are unlike the typical late-filing cases," the Court stated that "[t]he filing of the misdirected paper itself *satisfies* the diligence requirement as a matter of law." *Id*. at 1287, 1288 (emphasis added).

Subsequently, in *Santana-Venegas*, the Federal Circuit addressed for the first time whether a veteran was entitled to equitable tolling when he misfiled an NOA at the RO from which his claim originated. 314 F.3d at 1293. The Federal Circuit found that the veteran acted diligently when he misfiled his NOA within 120 days of the Board's decision and held, *as a matter of law*, "that a veteran who misfiles his or her [NOA] at the same [RO] from which the claim originated within the 120-day judicial appeal period of 38 U.S.C. § 7266[] thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations." *Id*. at 1298. In determining that Mr. Santana-Venegas satisfied the due diligence requirement, the Federal Circuit did not differentiate between Mr. Jaquay's misfiled motion for reconsideration by the Board Chairman and Mr. Santana-Venegas's misfiled NOA. *See id*. at 1297-98. Instead, the Federal Circuit stated:

> In the context of the non-adversarial manifestly pro-claimant veterans' benefits system, and consistent with our decisions in *Jaquay* and *Bailey* [(*Howard*) *v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc)], misfiling a[n NOA] at the [RO] from which the claim originated shows that the claimant seeks redress before the Secretary despite the claimant's mistaken belief as to the accuracy of the filing location and does not involve "a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96, 111 S. Ct. 453; *see also Bailey* [(*Howard*)], 160 F.3d at 1365. *Once a veteran takes the affirmative act of seeking redress of his or her claim through a filing with the [RO] from which the claim originated rather than the Veterans Court, "[t]he filing of the misdirected paper itself satisfies the diligence requirement as a matter of law*."

*Id*. (emphasis added) (quoting *Jaquay*, 304 F.3d at 1288 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962))).

Notwithstanding *Santana-Venegas*'s wholesale adoption of *Jaquay* and its determination that the diligence requirement was "'*satisfie*[*d*] . . . *as a matter of law*,'" the majority improvidently limits

23

the effect of a timely misfiling. *Id.* at 1298 (emphasis added) (quoting *Jaquay*, 304 F.3d at 1288 (citing *Goldlawr,* 369 U.S. at 467)). Although the majority purportedly accepts the Federal Circuit's holdings that an appellant demonstrates due diligence as a matter of law through the timely misfiling of an NOA, the majority holds that the appellant does so only with respect to "*the point in time* when he or she files an NOA within the 120-day appeal period at the RO from which the claim originated, the Board, or possibly other locations within VA." *Ante* at 10-11 (emphasis added). The majority states that "a prospective appellant's actions taken after learning of the misfiling are factors in the 'relaxed' due diligence assessment." *Ante* at 11. Not only is this assessment unsupported by Federal Circuit precedent,[14] it unnecessarily obfuscates an area that had been clear and unambiguous.

*2. Uncertainty and Confusion Created by the Majority's Relaxed Due Diligence Requirement*

First and foremost, my colleagues fail to provide the Court with any guidance to determine in the future whether a prospective appellant demonstrates "relaxed" due diligence. Whereas a prospective appellant previously satisfied the due diligence requirement, as a matter of law, by showing that he misfiled an NOA at the RO or the Board within the 120-day judicial appeal period, the majority creates a separate, distinct period during which a prospective appellant must demonstrate "relaxed" due diligence – *after* learning that an NOA was misfiled – but fails to provide any indicia of what actions – short of refiling the NOA at the Court – the prospective appellant must take to satisfy this burden. Indeed, the facts in Mr. Rickett's case demonstrate that he filed his NOA with the Court on the *same day* that he learned of the misfiling.

Second, by requiring an examination of this separate, distinct period, the majority creates an additional evidentiary hurdle for the pro se prospective appellant – to prove *when* he first acquired knowledge that his NOA was misfiled. Presumably, this would need to be determined as part of the majority's newly imposed "relaxed" due diligence assessment. However, they fail to articulate what

---

[14] The majority asserts that their view is not inconsistent with Federal Circuit precedent by emphasizing the Federal Circuit's failure to state that the prospective appellant's postmisfiling actions were not relevant in *Brandenburg* and *Santana-Venegas*, and alludes to an implicit finding that the appellants had demonstrated diligence after learning of the misfiling, by stating that "those decisions specifically noted the time between the appellant learning of the misfiling and the proper filing at the Court." *Ante* at 11. This suggestion is not persuasive for two reasons. First, just as *Brandenburg* and *Santana-Venegas* do not find a lack of postmisfiling diligence, they also do not contain any affirmative finding that the appellant demonstrated due diligence *after* learning of the misfiling. Second, nowhere in the Federal Circuit's analysis whether equitable tolling was warranted was the length of time between learning of the misfiling and proper filing at the Court pertinent to its discussion. *See Santana-Venegas*, 314 F.3d at 1297 (concluding that "Mr. Santana-Venegas *acted diligently by filing his* [*NOA*] *within 120 days of the* [*Board's*] *decision . . .* at the [RO] from which the claim originated" (emphasis added)); *see also Brandenburg*, 371 F. 3d at 1364 (finding "no meaningful difference" between a misfiling at the Board and a misfiling at the RO).

Moreover, although the facts in *Bailey* (*Edward*), 351 F.3d at 1383, indicate that the appellant did not follow up with the Court until nearly six months after the RO received his timely misfiled NOA, the Federal Circuit did not suggest that these facts were pertinent to a determination whether due diligence had been satisfied. Instead, the Federal Circuit held "*as a matter of law*, [that] a veteran who attempts to file a[n NOA] by completing a document that is clearly intended to serve as a[n NOA] and who has that document delivered to the [RO] from which the veteran's claim originated within the 120-day statutory period for appeal is entitled to invoke the doctrine of equitable tolling." *Id.* at 1385 (emphasis added).

standard the Court should employ to assess *when* a prospective appellant learned of the misfiling.[15] *See ante* at 14 (stating that it is undisputed that Mr. Rickett contacted the Court approximately one-month after the 120-day appeal period expired and filed a new NOA "promptly upon learning his mistake").

### 3. New Barrier to Judicial Review Does Not Accomplish Goal

The rule adopted by the majority today may serve to deny many pro se prospective appellant's access to judicial review, where existing precedent otherwise would not have resulted in a similar bar. Nonetheless, my colleagues attempt to explain their holding by stating that "equitabl[e] tolling . . . cannot be based solely on a timely misfiling at any location outside the Court, possibly followed by inaction for many years *after* learning of the misfiling" because "[t]o do so would subjugate the important [procedural] rule that requires filing of a timely NOA with the Court to the control of others and give little meaning to the term 'relaxed due diligence' and the requirement that prospective appellants diligently pursue judicial review to invoke equitable tolling." *Ante* at 11 (emphasis added). If they are concerned that we would have to consider an appeal that languished for years after a timely misfiling before an NOA reaches the Court, then their focus on the prospective appellant's actions during the period between learning that an NOA was timely misfiled and the eventual filing at the Court does not address this concern. If their concern is to "give meaning" to the term "relaxed due diligence" their decision negates this concern. *Ante* 9 (stating that *Santana-Venegas* and *Jaquay* indicated that the due diligence requirement for equitable tolling is "relaxed" when a pro se prospective appellant timely misfiles a pleading). With no disrespect to my esteemed colleagues, I am perplexed by their characterization of this assessment as "relaxed," when their decision creates at least one additional obstacle in the path of the pro se veteran's right to judicial review and alludes to others. Moreover, it ignores the Federal Circuit's explicit refusal in *Jaquay*, followed in *Santana-Venegas*, to get involved in the split among its sister circuits to determine whether one satisfies due diligence by "filing the right thing in the wrong place," because "[m]isfiling cases within the veterans' system are unlike the typical late-filing cases." *Jaquay*, 304 F.3d at 1287, 1288; *see also Santana-Venegas*, 314 F.3d at 1297-98; *see generally Henderson*, 131 S. Ct. at 1205-06 (noting that "[t]he contrast between ordinary civil litigation . . . and the system that Congress created for the adjudication of veterans' benefits claims could hardly be more dramatic" and that "[r]igid jurisdictional treatment of the 120-day period for filing a[n NOA] in the Veterans Court would clash sharply with this scheme"); *Bailey* (*Howard*), 160 F.3d at 1368 (Michel, J., concurring) (noting that *both* the Supreme Court and the Federal Circuit "have long recognized that disputes that

---

[15] My colleagues repeatedly emphasize the matters that are not decided in this decision: (1) "[T]he Court will not now endeavor to provide an exhaustive list of factors to consider in a due diligence analysis" (*ante* at 9); (2) "[W]e decline to address and leave for another day the question whether relaxed due diligence is required for the period between a timely misfiling and learning that the NOA was misfiled in the wrong location," but observing that Mr. Rickett's actions during that period would appear to have satisfied that requirement." (*ante* at 11 n.5); (3) reiterating that "we decline to address in this decision whether *relaxed due diligence* was required of Mr. Rickett between his timely misfiling at the wrong location and his learning that he had misfiled" (*ante* at 14 n.7 (emphasis added)). My colleagues' statement that they "decline to address" a question that was not raised by the parties and which represents a significant departure from the Federal Circuit's established precedent certainly alludes to more impending hurdles being placed in the pro se veteran's path to judicial review.

arise in this system are subject to procedural and other rules that are distinctly advantageous to the veteran claimant").

Thus, to the extent that the majority suggests that it may be appropriate to examine the period between the misfiling and the prospective appellant's learning that the NOA was misfiled, I believe that such a requirement is particularly inappropriate at a time when VA takes 866 days[16] to process an appeal from the time a claimant files a Notice of Disagreement to issuance of a final Board decision. An unfortunate reality of the VA benefits system is that veterans are conditioned to wait years for responses to their claims and appeals. Although the Court is independent from VA, this fact is not apparent to many pro se appellants. As a result, it is not unreasonable that prospective appellants, who are accustomed to waiting, may expect to wait a long time for a response or not know or think to follow up on an NOA.

## B. Conclusion

Our existing precedent establishes that, as long as a prospective appellant's intention is clear, VA is put on notice of his intention to seek further review of his claim, and the prospective appellant satisfies the due diligence requirement through the defective filing, that *is* the end of the matter. *See Brandenburg, Bailey* (*Edward*)*,* and *Santana-Venegas*, all *supra*. Therefore, although I concur in the result reached by the majority, I must respectfully dissent from its holding that "the due diligence assessment, which is 'relaxed' in cases of timely misfilings by pro se, prospective appellants, is based on the totality of the circumstances surrounding the misfiling and actions taken after learning of the misfiling." *Ante* at 11.

---

[16] *See* 2012 Department of Veterans Affairs Performance and Accountability Report (Nov. 15, 2012); http://www.va.gov/budget/report/.